United States District Court
Southern District of Texas
**ENTERED**
December 01, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAMUEL McCAIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-21-2109 |
| § | |
| TIER 1 COMPLETIONS SOLUTIONS, INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Samuel McCain alleges that Tier 1 Completions Solutions failed to pay its employees overtime compensation, in violation of the Fair Labor Standards Act. (Docket Entry No. 1). Tier 1 Completions asserts that this lawsuit is improperly before this court because McCain agreed to bring his claims in arbitration. (Docket Entry No. 5, at 9). Tier 1 Completions moved to compel arbitration, attaching the arbitration agreement that bears McCain's signature. (Docket Entries No. 11, 13). McCain opposes the motion, asserting that he never signed the arbitration agreement, because "he has no emails related to his supposed arbitration agreement." (Docket Entry No. 12, at 3). Because McCain has not put forth any evidence disputing the existence of a signed and valid agreement to arbitrate, the court grants the motion to compel arbitration. An order of dismissal is separately entered.

**I.   Legal Standard**

Under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, if a suit is brought on an issue "referable to arbitration under an agreement in writing for such arbitration," the court must, on the

request of a party, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

To determine whether a dispute is arbitrable under the Federal Arbitration Act, the court must determine: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Gross v. GGNSC Southaven, LLC*, 817 F.3d 169, 176 (5th Cir. 2016) (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 418–19 (5th Cir. 2006)); *Gezu v. Charter Commc'ns*, 17 F.4th 547 (5th Cir. 2021). Here, the parties dispute only that there is a valid agreement to arbitrate between them. They do not dispute that McCain's claims fall within the scope of the arbitration agreement, if McCain did sign the agreement.

**II.     Analysis**

Tier 1 Completions extended an offer of full-time employment to McCain in July 2020. Tier 1 Completion sent McCain his offer letter, along with other documents, using the DocuSign application. The package included a confidentiality agreement, a background check authorization form, a driver release form, a benefits guide, and an arbitration agreement. (Docket Entry No. 11-1, at 2–3). In total, Tier 1 Completion sent McCain 17 documents by email. (*Id.*; *see also* Docket Entry No. 11-2, at 2–3).

To use DocuSign, McCain had to create his own DocuSign account. Tier 1 Completions "did not have the login credentials or security passcode or any ability to access or enter into Mr. McCain's DocuSign account." (Docket Entry No. 11-1, at 3). "The DocuSign application records and timestamps every action with regard to the document envelope," including the time when one signs the documents. (*Id.*). To return the arbitration agreement to Tier 1 Completions, McCain had to electronically sign the end of the agreement and initial each page. (*Id.*, at 4). According to

the DocuSign database, McCain signed the arbitration agreement and initialed the pages on a mobile device on July 17, 2020, at 8:06:56 p.m.  (*Id.*, at 3; *see also* Docket Entry No. 11-2, at 6). Tier 1 Completions attached McCain's signed and initialed copy of the arbitration agreement, dated July 17, 2020, to the motion to compel.  (Docket Entry No. 11-2, at 15–19).

McCain "admits signing various documents related to his employment," but he asserts that "he has no emails related to his supposed arbitration agreement."  (Docket Entry No. 12, at 3). McCain's alleged lack of emails related to the arbitration agreement is not a sufficient basis to challenge the existence of the signed arbitration agreement produced by Tier 1 Completions. McCain does not deny that the documents bear his electronic signature.  The record shows that McCain opened and signed the arbitration agreement and sent it back to Tier 1 Completions.  (*See* Docket Entry No. 11-2).

McCain also asserts that the "document produced by Defendant, contrary to Defendant's evidence," was signed on July 24, 2020, and not on July 17, 2020.  (Docket Entry No. 12, at 2). Clayton Craighead, McCain's attorney, submitted an affidavit, stating that "[u]pon reviewing the 'signature panel' of the arbitration agreement, Adobe Acrobat indicates it was supposedly signed on July 24, 2020."  (Docket Entry No. 12-1, at 1).  Craighead attached a screenshot of the Adobe signature panel.  (*Id.*).

The difference in the recorded signature date by Adobe Acrobat and DocuSign creates, at most, a disputed issue as to the date when McCain signed the arbitration agreement, but not whether he did so.  McCain was the only person who could access and sign the arbitration agreement using DocuSign.  *See Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 206 (Tex. 2021) ("A record that cannot be created or changed without unique, secret credentials can be attributed to the one person who holds those credentials.").  Tier 1 Completions has produced an arbitration

3

agreement signed by McCain. Whether McCain signed the agreement on July 17 or July 24, the bottom line is the same: he signed the agreement.

Tier 1 Completions has provided evidence that Tier 1 Completions sent McCain an arbitration agreement to his email to sign using the DocuSign application; that McCain created a personal login account to access the documents, inaccessible to Tier 1 Completions; that McCain could not return the arbitration agreement to Tier 1 Completions until he signed and initialed the document where required; and that Tier 1 Completions received an arbitration agreement signed by McCain. McCain has offered no evidence supporting that he did not electronically sign the arbitration agreement that Tier 1 Completions has presented. The arbitration agreement exists, and McCain does not otherwise challenge its validity.

Nor does McCain dispute that his claims are covered by the valid arbitration agreement. (*See* Docket Entry No. 11-2, at 16 (covering "any claim that could be asserted in court . . . for which the employee has an alleged cause of action" related to "bonus pay and overtime pay . . . and/or claims for violation of any federal, state or other governmental law, statute, regulation or ordinance")). When, as here, the claims are covered by a valid arbitration agreement, dismissal is appropriate. *See Slough v. Legacy Home Health Agency, Inc.*, H-21-1318, 2021 WL 3367816, at *3 (S.D. Tex. Aug. 3, 2021).

Tier 1 Completions also moved for Rule 11 sanctions "based on [McCain's] willful and baseless pursuit of his claims . . . despite having been given clear notice of his agreement to arbitrate." (Docket Entry No. 11, at 1). There is no evidence that McCain pursued his claims in this court with any improper purpose. McCain's arguments regarding the validity of the arbitration agreement are without merit, but not frivolous so as to warrant sanctions. Tier 1 Completions's motion for sanctions is denied.

**III. Conclusion**

Tier 1 Completions's motion to compel arbitration is granted and motion for sanctions is denied. An order of dismissal is separately entered.

SIGNED on December 1, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge